UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORETHA HILL,

    Plaintiff,                    Civil Action No. 16-13034

       v.                       Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**OPINION AND ORDER**

Plaintiff Doretha Hill ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI") under the Social Security Act. For the reasons discussed below, Defendant's Motion for Summary Judgment [Docket #20] is GRANTED and Plaintiff's Motion for Summary Judgment [Docket #16] is DENIED.

**PROCEDURAL HISTORY**

On June 27, 2013, Plaintiff applied for SSI, alleging disability as of June 1, 1970[1] (Tr. 132). After the initial denial of her claim, Plaintiff requested an administrative hearing, held on June 17, 2015 in Mt. Pleasant, Michigan (Tr. 28). Administrative Law Judge

---

[1]The alleged onset of disability date was later amended to June 3, 2013 (Tr. 11, 33).

("ALJ") Manh H. Nguyen presided. Plaintiff, represented by attorney Matthew Taylor, testified (Tr. 32-50), as did Vocational Expert ("VE") Sue Lyons (Tr. 50-54). On July 31, 2015, ALJ Nguyen found Plaintiff not disabled (Tr. 11-23). On July 22, 2016, the Appeals Council denied review (Tr. 1-3). Plaintiff filed the present action on August 22, 2016.

**BACKGROUND FACTS**

Plaintiff, born October 10, 1966 was 45 at the time of the administrative decision (Tr. 23, 132). She received a GED and received training as a custodian (Tr. 161). She worked previously as a janitor, laborer, salon worker, and waitress (Tr. 162). She alleges disability as a result of bipolar disorder, memory problems, a borderline personality disorder, depression, and fibromyalgia (Tr. 161).

**A.     Plaintiff's Testimony**

Plaintiff offered the following testimony:

She lived in an apartment in Saginaw, Michigan (Tr. 33). She stood 5' 5" and weighed 192 pounds (Tr. 33). *Plaintiff's counsel interjected that salon work, performed in 2005, was the only former work activity amounting to Substantial Gainful Activity* (Tr. 34).

Plaintiff resumed her testimony:

The hair stylist work had been performed out of her home (Tr. 35). The work could be performed in the sitting or standing position (Tr. 35). She now suffered from right knee swelling which was exacerbated by sitting, standing, or walking for extended periods (Tr. 37, 48). She was unable to walk for more than half a block, stand for more than 30 minutes, or sit for more than 60 (Tr. 37-38). A knee brace improved her ability to walk but did not

-2-

relieve the knee pain (Tr. 38). She attended physical therapy for three weeks but stopped due to increased pain (Tr. 39). Steroid injections did not improve the knee condition (Tr. 39). She obtained relief from elevating her leg and did so "as much as possible" for up to 10 hours a day (Tr. 39-40). Elevating the knee above waist level partially relieved the pain (Tr. 48, 49-50). The knee pain caused sleep disturbances (Tr. 39). She used a motorized cart while grocery shopping (Tr. 40).

In addition to the physical problems, Plaintiff experienced anxiety in crowds and grocery shopped in the early morning or late at night (Tr. 40). She believed that others could be trying to harm her (Tr. 42). She experienced panic attacks both at the grocery store, driving, and at home (Tr. 42). She lived down the street from her son's house but preferred to be at her own home due to the children, dogs, and noise at her son's house (Tr. 43). She did not leave the house three to five days a week (Tr. 44). She experienced nighttime anxiety, noting that she worried that someone was in the closet or under the bed (Tr. 45). Sleep medication improved but did not resolve her sleep disturbances (Tr. 46). She spent most of her time relaxing and watching television (Tr. 46). She experienced problems following the plot of a movie and was required to rewind the movie "for days" before getting to the end (Tr. 47).

### B. Medical Evidence

#### 1. Records Related to Plaintiff's Treatment[2]

January, 2012 medical records by the Michigan Department of Corrections ("MDOC") note treatment for breathing problems and high cholesterol (Tr. 248). July, 2012 MDOC records state that Plaintiff requested treatment for Post Traumatic Stress Disorder ("PTSD") (Tr. 288-289). Treating records from the next month note her report of crying spells, mood swings, and sleep disturbances (Tr. 298). In September, 2012, Plaintiff expressed hope that she could start either a cleaning business or a hair and nail salon (Tr. 312). She exhibited good judgment but a depressed affect (Tr. 315-316). November, 2012 treating records state a GAF of 62 with good judgment and memory[3] (Tr. 331).

June, 2013 psychological intake records note Plaintiff's complaints of depression, bipolar disorder, and sleeping problems (Tr. 334). She reported that her work abilities were also compromised by hand and leg swelling and severe back pain, but characterized her health as generally good (Tr. 337). She admitted to committing crimes while using drugs (Tr. 338). She appeared fully oriented with good memory and judgment (Tr. 342). She was

---

[2] Evidence predating the amended alleged onset of disability date of June 3, 2013 is included for background purposes only.

[3] GAF scores in the range of 61 to 70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* ("*DSM–IV–TR*"), 34.

assigned a GAF of 80[4] (Tr. 344).

July, 2013 treating records note Plaintiff's reported of right knee pain and occasional swelling (Tr. 399). She exhibited a normal gait and a full range of motion (Tr. 403). She did not appear depressed or anxious (Tr. 403). Later the same month, she noted increased asthma symptoms but good results from Zoloft (Tr. 407). October, 2013 treating records noted mild hand swelling but "significant" knee swelling (Tr. 426). She reported that she had not been using medication or ice for the knee condition (Tr. 423).

October, 2013 psychological intake records note Plaintiff's report of audio and visual hallucinations and suicide attempts (Tr. 382). She appeared fully oriented with average intelligence and good judgment (Tr. 383). She was assigned a GAF of 41 due to depression and anxiety[5] (Tr. 383). Therapy records note the conditions of depression, anxiety, and a borderline personality disorder (Tr. 510). Physical treating records from the next month note a normal gait and station, a normal range of motion, and no swelling (Tr. 435). In December, 2013, Plaintiff did not exhibit symptoms of depression (Tr. 441).

A January, 2014 MRI of the right knee showed internal derangement and osteoarthritis (Tr. 443). Plaintiff was advised to lose weight (Tr. 444). Treating records note the absence

---

[4]

A GAF rating of 71–80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." *DSM–IV–TR* at 34.

[5]A GAF score of 41 to 50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM-IV-TR* at 34.

of depression, anxiety, or agitation (Tr. 449). Psychological treating records from the same month state that Plaintiff had improved her living condition through problem solving skills (Tr. 518). February, 2014 treating records state that she was independent in self-care and household tasks (Tr. 392). Plaintiff reported that she needed disability benefits and Medicaid so she could "move into her own place" (Tr. 396). In March, 2014, Andrew Champine assessed Plaintiff's mental abilities, finding that she experienced moderate limitation in the ability to understand, remember, or carry out detailed instructions or work within a schedule (Tr. 377-378). He also found moderate limitations in the ability to interact with supervisors and coworkers; adapt to workplace changes, use public transportation, and set realistic goals (Tr. 379). He found marked limitation in the ability to work with others and complete a workday without interruption for psychologically based symptoms (Tr. 378). He found that Plaintiff would miss 30 of 30 workdays each month due to psychiatric symptoms (Tr. 379). He assigned Plaintiff a GAF of 50 due to depression with psychotic features, fibromyalgia (self-reported), and financial limitations (Tr. 380). Psychological treating records state that Plaintiff was less irritable and was "alert" and "talkative" (Tr. 526). Treating notes from the end of the month state that Plaintiff reported that she was "doing well" and denied mood swings on her current psychotropic medication (Tr. 579).

    The same month, steroid injections were administered for the knee condition (Tr. 452). Treating records note a normal range of motion and no tenderness (Tr. 454). In May, 2014, Plaintiff was again advised to lose weight due to the knee condition (Tr. 465). July, 2012 records note no acute distress and a normal affect (Tr. 487). She reported continued

knee pain (Tr. 489). She exhibited a normal gait and range of motion (Tr. 493). In September, 2014, Plaintiff reported that physical therapy made her pain worse (Tr. 497). A respiratory examination was unremarkable (Tr. 502). Results from a depression questionnaire were consistent with "minor depression" (Tr. 505). December, 2014, psychological treating records note that Plaintiff was "friendly and talkative" and sleeping better with medication (Tr. 564).

A February, 2015 psychological evaluation shows that Plaintiff was independent in self care, transportation, financial, and independent living skills (Tr. 550-553). She exhibited a normal mood and judgment (Tr. 555). A March, 2015 psychological evaluation states that Plaintiff had been "clean" for five years (Tr. 538). She was deemed independent in self care and exhibited a cooperative attitude (Tr. 541, 543). She exhibited good judgment and impulse control (Tr. 543). The same records note the presence of paranoia.

### 2. Non-Treating Records

In August, 2013, Leon Austin, Psy.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of symptoms of PTSD and bipolar disorder including panic attacks, suicidal ideation, and irritability (Tr. 355-356). Plaintiff reported that she shared the cooking and cleaning responsibilities with the two women she lived with (Tr. 356). Dr. Austin noted that Plaintiff was well groomed and fully oriented with a depressed affect (Tr. 357). He noted some impairment of memory but found that she was "able to perform simple tasks with some possible limitations" (Tr. 358). He assigned

her a GAF of 55 with a poor prognosis[6] (Tr. 359).

The same month, Siva Sankaran, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of Gastroesophageal Reflux Disease ("GERD") since she was a teenager, Chronic Obstructive Pulmonary Disease ("COPD"), and asthma (Tr. 369). She reported asthmatic symptoms only during weather changes, noting that she was otherwise "fine" and could walk around five city blocks (Tr. 369). She reported lower back and knee pain, but added that despite a 1997 diagnosis of fibromyalgia, she did not experience limitations from the condition (Tr. 370). She did not require the use of a cane or walker and reported that she could perform most household chores without difficulty (Tr. 370). Dr. Sankaran noted a full range of motion and unremarkable neurological testing (Tr. 371). Plaintiff demonstrated multiple tender points and lumbar spine tenderness (Tr. 371). Dr. Sankaran found no acute medical problems, remarking that the asthma was well controlled with medication (Tr. 373).

In September, 2013, Bruce G. Douglass, Ph.D. performed a non-examining assessment of the treating and consultative record, finding that due to depression, anxiety, and personality disorders, Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 61-62).

---

[6] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM–IV–TR* at 34.

## C. Vocational Expert Testimony

VE Sue Lyons classified Plaintiff's former work as a hair stylist as skilled and exertionally light[7] (Tr. 37, 50). The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience:

> This person can occasionally lift and or carry up to 20 pounds; frequently lift and or carry up to 10 pounds; stand and or walk up to six hours in an eight-hour work day; sit for up to six hours in an eight-hour work day. The person cannot climb ladders, ropes, or scaffolds, kneel, or crawl. The person can occasionally climb stairs and ramps, and balance, stoop, and crouch. The person can occasionally tolerate environmental pollutants, such as dust, fumes, and smoke. The person cannot work around unprotected heights or operate moving machinery. the person can carry off simple instructions. The person cannot work at – the person cannot work at a production work pace such as assembly line work. The person can tolerate occasional changes in the work place. The person cannot interact with the general public as part of his or her general job duties. The person can occasionally interact with supervisors and co-workers. Ms. Lyons, would a person with the these restrictions be able to perform the claimant's past relevant work? (Tr. 51).

In response, the VE testified that the above limitations would preclude Plaintiff's past relevant work but would allow for the unskilled, light work of a assembler (94,000 in the national economy); packer (61,000); and inspector (36,000) (Tr. 52). She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles*

---

[7] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

("*DOT*") (Tr. 52). The VE testified that if the same individual were also limited by the need to be off task for 20 percent of the workday due to inattention, the need to elevate the right leg to at least waist level, miss two days of work each month, or, the complete inability to interact with supervisors or co-workers, she would be unable to perform any competitive employment (Tr. 53).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "asthma, anemia, hypertension, obesity, fibromyalgia, mild right knee arthritis, bipolar disorder, major depressive disorder, posttraumatic stress disorder ("PTSD"), panic disorder, and polysubstance abuse in full remission" but that none of the conditions met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). He found that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and in concentration, persistence, or pace (Tr. 15). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [S]he is able to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of six hours of an eight-hour workday, and sit for a total of six hours of an eight-hour workday. She can occasionally balance, stoop, crouch, and climb ramps and stairs; she cannot kneel, crawl, or climb ladders, ropes, or scaffolds; she can occasionally tolerate environmental pollutants, such as fumes, dusts, and smoke; and she cannot work around unprotected heights or operate moving machinery. She can carry out simple instructions and tolerate occasional changes in the workplace, but she cannot work at a production rate pace (as in assembly line work). She cannot interact with the general public as part of her job duties, but she can occasionally interact with supervisors and coworkers (Tr. 16).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform her past relevant work, she could work as an assembler, packer, and inspector (Tr. 21-22).

The ALJ discounted Plaintiff's alleged degree of limitation, citing Dr. Austin's August, 2013 consultative examination finding that Plaintiff was capable of performing "simple, familiar, and routine tasks" (Tr. 18). He also cited Plaintiff's acknowledgment to Dr. Sandarac that her asthma was "fine" except when the weather was changing (Tr. 18). The ALJ noted that Plaintiff did not require the use of a cane or walker and did not exhibit range of motion limitations (Tr. 18). He observed that despite the allegations of limitation, Plaintiff was able to care for herself, clean her home, prepare meals, do laundry, sweep, play with her grandchildren, manage her own finances, and read (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues that the administrative opinion contains internal inconsistencies. *Plaintiff's Brief,* 4-13, *Docket #16,* Pg ID 639. Specifically, she contends that while the ALJ accorded "great weight" to the "medical opinions and restrictions," the RFC does not reflect their full degree of limitation. *Id.* (*citing* Tr. 20). She argues further that the ALJ exaggerated the scope and frequency of her activities to support his determination that her claims were not credible. *Id.* at 13-14.

As a threshold matter, Plaintiff's argument regarding the medical sources is premised on a mischaracterization of the ALJ's findings. The "great weight" finding by the ALJ is as follows:

> "[The] opinions from Dr. Douglass and Mr. Champine are given great weight *to the extent that they are consistent with both the claimant's RFC and the evidence of record . . .* (Tr. 20)(emphasis added).

Likewise, the ALJ accorded "great weight" to Dr. Austin's findings "*to the extent that it is consistent with both the claimant's RFC and the evidence of record . . .*" (Tr. 18)(emphasis added).

Further, the ALJ's reasons for the *partial* adoption these records is well supported and explained. Plaintiff notes that consultative source Dr. Austin noted poor short-term memory skills and calculations. *Plaintiff's Brief* at 4-5 (*citing* Tr. 357-358). She notes that Dr. Austin found that her ability to relate to others; understand, recall, and complete tasks; maintain concentration; and withstand normal stressors was impaired. *Id.* at 5-6 (*citing* 358). However, the ALJ directly addressed these findings, noting that in consideration of Dr.

Austin's findings, the RFC was limited Plaintiff to "occasional changes in the workplace;" a preclusion on production line work and interaction with the public; and occasional interaction with supervisors and coworkers (Tr. 16, 18). However, the ALJ noted that despite Dr. Austin's finding of some degree of psychological limitation, he ultimately found that Plaintiff was capable of "simple, familiar, and routine tasks" (Tr. 18 *citing* 358). The RFC reflects both Dr. Austin's discrete findings of psychological limitation and his conclusion that she was capable of a range of unskilled work.

Plaintiff's argument also fails to the extent that she contends that RFC does not reflect the severity of limitation as found by Dr. Austin. Even assuming that the RFC can be interpreted to state milder limitations than those found by Dr. Austin, the milder degree of limitation is supported by substantial evidence found elsewhere in the record. The ALJ cited July, 2013 psychological records showing mood stabilization (Tr. 17, 407). He noted that while the psychological treating records from April, 2014 note Plaintiff's report of crying spells, concentrational problems, and hallucinations, her depression was described as only "moderate" as of September, 2014 (Tr. 19). He cited the March, 2015 treating records noted that Plaintiff was independent in activities of daily living including cleaning, shopping, laundry, making appointment, and handling her finances (Tr. 19).

The ALJ provided a similarly cogent summation of the findings of therapist Champine and non-examining source Dr. Douglass. To the extent that the ALJ declined to credit

Champine's finding that Plaintiff would miss multiple days of work each month[8] and experienced marked limitation in working with others, the ALJ cited Plaintiff's acknowledgment that she got along well with her roommates, "shopped without incident" (despite her allegations of anxiety in public places), went to church, took classes, and scheduled her own appointments (Tr. 15, 20).  The ALJ correctly determined that an April, 2014 letter by Champine stating that Plaintiff would be unable to "engage in many basic vocational tasks at this time," was entitled to no weight given that "the issue of disability is reserved solely to the Commissioner . . ." (Tr. 20)(*citing SSR* 96-2p, 1996 WL 374188, *2 (July 2, 1998); 20 .F.R. 416.927(d)).

Plaintiff's argument that the ALJ erred by failing to adopt all of Dr. Douglass' non-examining findings is harder to fathom.  The ALJ's finding that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, and pace mirrors Dr. Douglass' non-examining assessment (Tr. 15, 61-62).  In response to Dr. Douglass' finding that Plaintiff experienced "marked" limitations in the ability to interact appropriately with the general public (Tr. 65), the ALJ precluded all work requiring dealing with the public (Tr. 16).  Plaintiff argues, in effect, that the findings of moderate limitation in working within a schedule, working in coordination with others, and maintaining regular attendance support the finding that she was

---

[8] It is unclear how Champine could opine that Plaintiff would miss "30 out of 30" work days per month, since there are not that many vwork days" unless someone works every day.

psychologically unable to perform any gainful employment. However, the ALJ acknowledged the "moderate" psychological limitation but correctly noted Dr. Douglass' conclusion that Plaintiff was nonetheless capable of "routine, two-step tasks on a sustained basis" (Tr. 20).

Plaintiff also argues that the ALJ did not accord adequate weight to the psychological treating records, citing the April, 2014 records noting depression, crying spells, concentrational problems, anxiety, and hallucinations. *Plaintiff's Brief* at 12. However, the ALJ not only cited the April, 2014 records, but noted that the subsequent records showed a reduced degree of psychological limitation (Tr. 19, 526, 541, 564, 579). For overlapping reasons, Plaintiff's argument that the ALJ erred by failing to credit her allegations of limitation or improperly used her allegedly intermittent and limited activity to justify the non-disability determination is not well taken. While Plaintiff testified that she went to the grocery store very early or very late to avoid other people; experienced paranoia while driving; and chose to stay home three to five days a week, a March, 2015 treating assessment states that she was able to clean, shop, do laundry, make appointments and handle her finances (Tr. 19). The assessment does not suggest that she performed these activities sporadically, but rather on an ongoing and regular basis (Tr. 541-543). As such, the ALJ reasonably found that Plaintiff's acknowledged ability to take care of her personal needs, interact with others, take classes, and attend appointments undermined her claim that she was unable to perform unskilled work on a full-time basis (Tr. 21).

Because the ALJ's discussion of the medical evidence and his reasons for partially discounting Plaintiff's claims are well supported and articulated, a remand is not warranted. It is well established that "an ALJ's credibility determinations about the claimant are to be given great weight . . ." *Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007) (*citing Walters v. CSS,* 127 F.3d 525, 531 (6th Cir. 1997); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)) (*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

My determination to uphold the administrative decision should not be read to trivialize Plaintiff's physical problems or difficult personal history. Nonetheless, the ALJ's determination that she was capable of a significant range of unskilled work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment [Docket #20] is GRANTED. Plaintiff's Motion for Summary Judgment [Docket #16] is DENIED.

                                      s/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE

Date: September 30, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2017, by electronic means and/or ordinary mail.

s/H. Monda in the absence of C. Ciesla  
Case Manager